## ESTATE OF ISAAC BARBER, DECEASED.

APPEAL BY W. T. BARBER ET AL. FROM THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

Argued January 6, 1891—Decided May 25, 1891.

(a) A testator, dying in 1860, his estate being almost entirely made up of his interest in a partnership business with another, made his wife, his partner, and his wife's brother the executors of his will. In 1865, all the executors joined in a sworn account of the estate, and left it in the care of the widow.

Statement of Facts.

(b) In 1868, a supplement to the account was settled, and a paper executed by the widow and her husband—she then having remarried, wherein the full examination and correctness of the account were averred, and the formal auditing thereof in the Orphans' Court was waived in the interest of the beneficiaries.

(c) In 1879, after the death of the widow's brother and co-executor, the widow filed the account for adjudication in the Orphans' Court, but it was not called up for hearing before the auditing judge until 1881. Before final adjudication, to wit, in 1882, the partner, the other co-executor, died:

1. In such case, the testator's widow being the principal beneficiary under the will, the only other beneficiary having attained full age three years before the account was filed, and no fraud on the part of the co-executors being shown, the account as settled and confirmed by the parties was conclusive.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 226 January Term 1890, Sup. Ct.; court below, No. 224 July Term 1879, O. C.

On January 24, 1881, the account of Priscilla G. Cuthbert (late Barber) and Thornton B. Conrow, surviving executors of the will of Isaac Barber, deceased, filed on June 11, 1879, was called for audit before ASHMAN, J.

At the hearing, it was made to appear that the testator died in April, 1860, leaving a widow, Priscilla G., a daughter Elizabeth, who died in childhood, and a son William T., about five years of age, and leaving a will dated February 10, 1860, duly admitted to probate, constituting his partner, Thornton B. Conrow, his wife, Priscilla G., and his brother-in-law, B. B. Thomas, the executors thereof; that by his said will the testator devised to his wife, Priscilla G. Barber, for life, his house and lot No. 632 North Eleventh street, and all his household furniture absolutely; directed that the real estate owned by the firm of Conrow & Barber, in which he held an undivided half interest, should be held by his partner, Thornton B. Conrow, until an opportunity should offer for its sale at a fair price, vesting in his executors full power to sell the same; provided, in relation to his half interest in the stock of merchandise of Conrow & Barber, that if his partner, Thornton B. Conrow, should so elect, he should have the privilege of taking

Statement of Facts.

the same at its fair market value, to be determined by his executors or by two or more competent persons selected by them; and finally directed the investment of the proceeds of sale of his real and personal estate, including moneys arising from the collection of firm debts, and gave the income thereof to his said wife for life, and the principal after her death to his children, William T. Barber and Elizabeth Barber, in equal shares.

It was made to appear, further, that the inventory of the estate filed with the register of wills comprised but two items, to wit: Interest in the firm of Conrow & Barber, $22,811.25; household furniture, $685; total, $23,496.25; that on January 1, 1865, a partial settlement of the accounts of the surviving partner, Thornton B. Conrow, was made with Mrs. Barber, executrix, and her brother, B. B. Thomas, executor; that on April 4, 1865, an account of Mrs. Barber, Mr. Thomas, and Mr. Conrow, as executors of the will, was prepared and stated, and duly signed and sworn to by all the executors; that on May 30, 1868, a further settlement was stated, as alleged, between Mr. Thomas and Mr. Conrow, as executors, and Mrs. Barber (then married to one Cuthbert,) was signed and sealed by Mrs. Cuthbert and her husband, and concluded as follows:

"Now, in consideration of the accounts as settled having been carefully examined at different times and found to be correct, and in order to save to Priscilla G. Cuthbert the expense of filing and auditing said accounts, we hereby agree to hold harmless and indemnify the said B. B. Thomas and Thornton P. Conrow, executors aforesaid, from any damages, claim, or demand which may be made upon them, in consequence of their consent to relieve her or said estate of the expense of filing and auditing said account as required by law."

It was made to appear, further, that Mr. Thomas, one of the executors, died in 1877; and that the account as stated on April 4, 1865, which had been left in the possession of Mrs. Barber (Cuthbert), was filed by her in the Orphans' Court, on June 11, 1879, for the purpose of having the same audited.

On June 27, 1881, the last day of the audit, a supplementary account of the receipts and disbursements subsequent to the date of the account of April 4, 1865, was presented by Mr. Conrow, acting executor, but without vouchers; and on July

18, 1881, the auditing judge filed an adjudication, concluding with an order directing said accountant to present the account for vouching and correction by the first Monday of October next following.

The account thus ordered was not rendered. Mr. Conrow died on March 15, 1882, and the next step appearing to have been made was an order made on January 18, 1884, by ASH-MAN, J., under an agreement of the parties by their counsel, whereby the accounts filed were referred to *Mr. John B. Thayer*, "for audit, settlement and distribution." Subsequently, the auditor filed a report re-stating the entire settlement of the estate, finding as the result thereof that there was due to the estate by Mr. Conrow the sum of $4,465.38, which, with interest from June 11, 1879, to February 11, 1888, he awarded to Mrs. Cuthbert (late Mrs. Barber), the principal to be invested under the terms of the will of the testator.

To the auditor's report, seventy-four exceptions were filed on behalf of Priscilla G. Cuthbert (late Barber) and William T. Barber. Fifty-eight exceptions were filed by S. Morris Waln and H. F. Conrow, administrators of Thornton B. Conrow, deceased.

Said exceptions having been argued before the court in banc, the following opinion was filed, December 21, 1889, ASH-MAN, J. :

The principal point, which is presented by these exceptions and which, in our opinion, decides the fate of most of them, is the question, What was submitted to the auditor for his decision?

The decedent died in April, 1860, leaving a will of which he constituted as its executors his wife, Priscilla Barber, her brother, B. B. Thomas, and decedent's partner, Thornton B. Conrow. The executors prepared an account under oath of the estate, on April 4, 1856, and placed it in the custody and at the disposal of the widow. They evidently regarded this account as settling all questions to that date; and they waived the formality of an audit in open court, simply to escape the expense of such a proceeding. The proof of this is that, by an agreement under seal, dated May 30, 1868, the widow, who had re-married, and her husband, declared that the accounts as

Opinion of Court below.

settled were correct, and agreed to hold the co-executors harmless "from any damages, claim, or demand which might be made upon them, in consequence of their consent to relieve her or said estate of the expense of filing and auditing said accounts as required by law." The agreement set forth, in addition, certain unsettled partnership accounts and certain real estate, in which the widow's interest remained to be determined. On July 11, 1879, eleven years after this acknowledgment of its correctness, and two years after the death of Mr. Thomas, one of the executors, the widow filed the account. She did not, however, call it up for audit until January 24, 1881. On that and subsequent dates the parties were heard; and at the last sitting, June 27, 1881, Mr. Conrow, the surviving partner, who was, with Mrs. Cuthbert, the surviving executor, presented a supplemental account, brought down to August 29, 1870, and which was apparently intended to adjust the few items which, by the agreement of May 30, 1868, had been declared to be open.

It is very clear to our minds that this supplemental account was the only one over which the auditing judge had jurisdiction. The account of 1865 had been adjusted and settled by the solemn act of the parties themselves, and no fraud was alleged, or, if alleged, certainly was not proved, in connection with the settlement. To this consideration must be added a weightier. One of the parties to the original account, whose interests would be adversely affected if the settlement should be set aside, had died, and his estate was not represented at the audit. It is true that the son of the testator, who will be entitled to share in the estate after his mother's death, was a minor when the parties reached their resolution to settle; but it would be an astounding proposition to say that an executor may not effectually adjust the estate of his testator, with the consent of all present parties in interest, nor by satisfactory compromise with its debtors or creditors, so long as a single person under disability exists who has a reversionary or even a contingent right in the property. No accountant could be secure from liability, and no distributee could use his portion without risk, if this rule should prevail. That no such principle is recognized, however, is plain on the most cursory glance at the authorities. In Holmes's App. 79 Pa. 279, a settlement

with a surviving partner by the administratrix of a deceased partner, there being no fraud, was held to be binding upon the decedent's children. In Vyse v. Foster, L. R. 8 Ch. App. 309, one of the executors was a surviving partner, and purchased the firm interest of the decedent, in accordance with the will, but at a price agreed upon by his co-executors. The appellate tribunal held that the agreement bound the legatees. In Grim's App., 105 Pa. 375, the same doctrine was maintained.

Even if it were not, this case would be outside of its operation. The minor was amply protected by his mother, who was his guardian by nurture, and whose interest in the estate, under the will and through the death without issue of another child, was larger than his own. He reached full age three years before the account was filed by his mother, and he admitted that he had free access to the books from which it had been made up, and was associated in business with the surviving partner and executor. The widow was executrix as well as legatee. Her brother, a shrewd man of business, was joined with her in the trust, and so was the surviving partner of the decedent. If the testator had attempted, it is not likely that he could have selected three persons, in whom the interest of one, the neutrality of another, and the knowledge of the partnership affairs of a third could have better combined to affect an intelligent and equitable performance of the conditions of his will. When, therefore, these persons solemnly prepared an account of their trust, which the only one of their number who was beneficially interested therein as solemnly confirmed, they left nothing for the auditing judge to do.

He went on, however, with the audit and heard testimony, the notes of which cover thirty-five manuscript pages. Much of this testimony, which was given at long intervals during a period of five months, related to the purchase of the partnership stock in trade by the surviving partner; and, upon this point, and upon the question of his authority to purchase under the will, the auditing judge decided in favor of the accounting partner. He also decided that the share of the decedent had not been used in the business which was afterwards conducted by the surviving partner, and that neither the widow nor the son was entitled to claim profits, or interest in lieu of profits in that business. In his adjudication he stated that no vouch-

Opinion of Court below.

ers were produced for the credits taken in the supplemental account, and that the son was entitled to a full and intelligible account of the administration of the estate, from the surviving executor and partner, Conrow ; and he directed the latter to present the account on the first Monday in October next following, for audit.

Whatever may have been the meaning which he intended, it is certain that this direction can bear but one legal meaning ; and that is, that only the supplemental account, which had not been vouched, and which was fairly open to the charge of indistinctness, should be re-submitted. The parties did not appear at the time fixed ; but, on January 18, 1884, two years and six months afterwards, they handed to the auditing judge an order, which he granted as of course, setting forth that by agreement of counsel the accounts filed should be referred to an auditor for audit, settlement, and distribution. Thus, by a single ambiguous expression, the blame for which the auditing judge takes wholly upon himself, the auditor was led into the laborious consideration of an account, which the court had no power to settle, and no power, therefore, to refer to another to settle. The uncertain and unsatisfactory result of such an inquiry is apparent when we know that it extended to partnership accounts and transactions dating back, some of them, a quarter of a century, and between parties who alone held the clue to them, and both of whom are dead. The result is still worse from the fact that all these matters were fully investigated, when they were comparatively recent, by those who were most interested in ascertaining their character, and who had the largest facilities for making the inquiry. The proof was ample that the surviving partner invited at all times an inspection of the books of the firm, and he was expressly exonerated by the auditor from any charge of fraud or concealment. His conduct is now sought to be impeached by those who are guilty of laches as great as that which in Fidelity Co.'s App., 115 Pa. 158, was held to deprive a party of the right to equitable relief.

The auditor has earned just praise for the great industry and signal ability with which he has pushed his researches. He has, however, probably from the exigencies of the case, departed from the letter of the order of reference, and has stated an account. In that, he has covered the entire period which was

embraced in the original account and supplement, and has thrown it into a shape wherein it is impossible to determine what specific items, if any, in the supplemental account have been actually passed upon.    But it was conceded at the argument that if certain items surcharged by the auditor against the accountant Conrow should not be allowed, the balance would be in favor of the accountant; and counsel for his estate declared that no effort would be made to recover such balance. The items in question related to the original account, and the effect of the present ruling is to disallow them.    It remains, therefore, simply to sustain the exceptions of Thornton B. Conrow's estate, and to dismiss those of William T. Barber.

—Thereupon W. T. Barber and Mrs. Cuthbert took this appeal, filing thirty-three assignments, specifying that the court erred, inter alia, in sustaining the several exceptions to the auditor's report filed by the estate of Thornton B. Conrow, deceased, and in dismissing the several exceptions filed by the appellants.

*Mr. Henry C. Terry* and *Mr. John G. Johnson*, for the apellants.

*Mr. S. Morris Waln* and *Mr. George W. Biddle*, for the appellees.

PER CURIAM:

An examination of the record in this case has failed to convince us that there is any error therein that requires a reversal or modification of the decree.    Neither of the thirty-three specifications of error requires special notice.    The controlling questions involved in them are sufficiently presented and properly disposed of in the opinion of the court below.

Decree affirmed, and appeal dismissed at the costs of appellants.